IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| Bo WU,<br>Duo XU,<br>Yishan YU,<br>Yi-Chen WANG,<br>Yi-Hao WANG,<br>Zheng WU,<br>Thi Diem Thuy TRAN,<br>Lam Quang VO,<br>Tuan Phuc HO,<br>Byung Duck MOON,<br>Jongwook PARK,<br>      Plaintiffs,<br><br>    v.<br><br>United States Citizenship and Immigration Services,<br>      Defendant. | C/A No. 1:25-cv-11716<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT |

**INTRODUCTION**

Plaintiffs are eleven foreign nationals who have pooled their investment together in the CanAm Texas Regional Center LLC for immigrant visas based on the creation of jobs in the United States. 8 U.S.C. § 1153(b)(5). Plaintiffs invested in a rural project and because they have done so, Defendant, United States Citizenship and Immigration Services ("USCIS"), must prioritize the processing and adjudication of their immigrant visa petitions. 8 U.S.C. § 1153(b)(5)(E)(ii)(I). The priority processing was included as part of the *EB-5 Reform and Integrity Act of 2022*, passed as part of the Consolidated Appropriations Act of 2022, Pub. L. No. 117-303, § 103(a), 136 Stat. 49, 1075 (Mar. 15, 2022) ("RIA"). The RIA also specifically set forth targeted processing times of not more than 120 days for visa petitions associated in a targeted employment area. RIA § 106(a). Defendant has arbitrarily, capriciously, and unlawfully

1

withheld priority processing of Plaintiffs' petitions due, in part, to its failure to timely complete a fee study Congress required to be completed on or before March 15, 2023. RIA § 106(a). Plaintiffs respectfully request an order from this Court compelling Defendant to complete the fee study, adjudicate their EB-5 visa petitions, and concurrently adjudicate their applications for adjustment of status. Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), 706(2).

## PARTIES

1. Plaintiff Bo Wu is a citizen and national of the People's Republic of China. Plaintiff Wu resides in Sharon, Massachusetts. Plaintiff Wu filed a Form I-526E, Immigrant Petition by Regional Center Investor, on May 10, 2023, based on an investment of capital in a protect within a target unemployment area (receipt number: **IOE8204112602**).

2. Plaintiff Duo Xu is a citizen and national of the People's Republic of China. Plaintiff Xu resides in Jersey City, New Jersey. Plaintiff Xu filed a Form I-526E, Immigrant Petition by Regional Center Investor, on February 8, 2023, based on an investment of capital within a target unemployment area (receipt number: **IOE8831389475**).

3. Plaintiff Yishan Yu is a citizen and national of the People's Republic of China. Plaintiff Yu resides in Durham, North Carolina. Plaintiff Yu filed a Form I-526E, Immigrant Petition by Regional Center Investor, on November 30, 2022, based on an investment of capital within a target unemployment area (receipt number: **IOE8552698483**).

4. Plaintiff Yi-Chen Wang is a citizen and national of Taiwan. Plaintiff Wang resides in New York, New York. Plaintiff Wang filed a Form I-526E, Immigrant Petition by Regional Center Investor, on July 3, 2023, based on an investment of capital within a target unemployment area (receipt number: **IOE8322616705**).

5. Plaintiff Yi-Hao Wang is a citizen and national of Taiwan. Plaintiff Wang resides in

New York, New York. Plaintiff Wang filed a Form I-526E, Immigrant Petition by Regional Center Investor, on July 3, 2023, based on an investment of capital within a target unemployment area (receipt number: **IOE8227782830**).

6. Plaintiff Zheng Wu is a citizen and national of the People's Republic of China. Plaintiff Wu resides in Saint Louis, Missouri. Plaintiff Wu filed a Form I-526E, Immigrant Petition by Regional Center Investor, on January 17, 2023, based on an investment of capital within a target unemployment area (receipt number: **IOE8582854920**).

7. Plaintiff Thi Diem Thuy Tran is a citizen and national of Vietnam. Plaintiff Tran resides in Hanoi, Vietnam. Plaintiff Tran filed a Form I-526E, Immigrant Petition by Regional Center Investor, on December 20, 2022, based on an investment of capital within a target unemployment area (receipt number: **IOE8241023294**).

8. Plaintiff Lam Quang Vo is a citizen and national of Vietnam. Plaintiff Vo resides in Ho Chi Minh City, Vietnam. Plaintiff Vo filed a Form I-526E, Immigrant Petition by Regional Center Investor, on June 5, 2023, based on an investment of capital within a target unemployment area (receipt number: **IOE8073274492**).

9. Plaintiff Tuan Phuc Ho is a citizen and national of Vietnam. Plaintiff Ho resides in Ho Chi Minh City, Vietnam. Plaintiff Ho filed a Form I-526E, Immigrant Petition by Regional Center Investor, on August 7, 2023, based on an investment of capital within a target unemployment area (receipt number: **IOE8029758631**).

10. Plaintiff Byung Duck Moon is a citizen and national of South Korea. Plaintiff Moon resides in Jecheon-si, Chungcheognbuk-do, South Korea. Plaintiff Moon filed a Form I-526E, Immigrant Petition by Regional Center Investor, on April 17, 2023, based on an investment of capital within a target unemployment area (receipt number: **IOE8314392052**).

11. Plaintiff Jongwook Park is a citizen and national of South Korea. Plaintiff Park resides

in Sejong-si, South Korea. Plaintiff Park filed a Form I-526E, Immigrant Petition by Regional Center Investor, on May 12, 2023, based on an investment of capital within a target unemployment area (receipt number: **IOE8290810475**).

12.     Defendant United States Citizenship and Immigration Services is a component Bureau of the United States Department of Homeland Security. USCIS oversees the adjudication of all immigration benefits petitions, including immigrant visa petitions and applications for adjustment of status.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331. *Califano v. Sanders*, 430 U.S. 99, 106 (1977).

14.     Under its federal question jurisdiction, this Court can consider claims raised pursuant to the APA, 5 U.S.C. § 501, *et seq*.

15.     The APA authorized this Court to 1) compel agency action that is unreasonably delayed or unlawfully withheld; 2) set aside agency action that is arbitrary, capricious, or not in accordance with law; and 3) set aside agency action that is without observance of procedure required by law. 5 U.S.C. §§ 555(b), 706(1), 706(2)(A), 706(2)(D).

16.     The APA "embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967) (*quoting* 5 U.S.C. § 702).

17.     Defendant has a discrete, non-discretionary obligations to follow the RIA by completing a fee study, setting fees to complete processing of Form I-526E petitions within an average time of 120 days for projects in targeted employment areas, and prioritizing Plaintiffs' visa petitions because they are associated with a rural project. RIA §§ 106(a), (b);  8 U.S.C. §

4

1153(b)(5)(E)(ii)(I).

18. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(C) because Plaintiff Bo Wu resides within this District and there is no real property at issue.

19. Plaintiffs are appropriately joined under Federal Rule of Civil Procedure 20(a)(1)(A) because they assert a right to relief jointly or severally with respect to and arising out of the same series of transactions or occurrences.

20. Under Fed. R. Civ. P. Rule 20, persons may join in one action if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

21. "[J]oinder of claims, parties and remedies is strongly encouraged," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

22. The questions of law and narrow scope of relief concerning the adjudication of Plaintiffs' visa petitions and the concurrently filed applications for adjustment of status remain the same for all Plaintiffs and thus strongly favors joinder of Plaintiffs' claims in this civil action. *Id*.

## LEGAL BACKGROUND

### A. Allocation of Immigrant Visas

23. Congress has allocated at least 140,000 employment-based immigrant visas plus the number of unused family-sponsored green cards from the previous fiscal year. 8 U.S.C. § 1151(d).

24. Section 203(e)(1) of the INA, 8 U.S.C. § 1153(e)(1), provides:

> (e) Order of consideration
> (1) Immigrant visas made available under subsection (a) or (b) of this section shall be issued to eligible immigrants in the order in

>which a petition in behalf of each such immigrant is filed with the Attorney General . . . as provided in section 1154(a) of this title.

8 U.S.C. § 1153(e)(1).

25. Apart from the statute's first-in, first-out principle, the INA creates a variety of categories for which visas are to be granted.

26. For example, applicants seeking to qualify for employment visas must fit within one of the five employment-based "preference" categories enumerated in 8 U.S.C. § 1153(b), each subject to an annual cap. The five categories are made up of priority workers (EB1), members of professions holding advanced degrees or of exceptional ability (EB2), skilled workers, professionals, and other workers (EB3), special immigrants, comprised of special immigrant juveniles, ministers of religion, and religious workers (EB4), and employment creation immigrants (EB5). 8 U.S.C. § 1153(b)(1).

27. The INA divides the overall EB annual limit between the five employment-based categories based on fixed percentages. EB1, EB2, and EB3 each receive 28.6% of the overall limit, and EB4 and EB5 each receive 7.1% of the overall limit. 8 U.S.C. § 1153(b).

28. Each month the Department of State publishes a monthly visa bulletin that "summarizes the availability of immigrant numbers" for the particular month ahead "indicating when immigrant visa applicants should be notified to assemble and submit required documentation" to the appropriate agency whether USCIS or the Department of State's National Visa Center.

29. When the amount of demand for a particular category/country exceeds the supply of visa numbers available, the category/country is considered "oversubscribed," and a visa availability cut-off date is established. The cut-off date is provided as a particular priority date (the date upon which the underlying labor certification application was accepted for processing by the Department of Labor, or if exempt from a labor certification requirement, the date the

immigrant visa petition was accepted for processing by USCIS) of the first applicant who could not be accommodated for a visa number. *See* 8 C.F.R. § 204.5(d).

30. The government has long interpreted the INA to mean that visas are only available for issuance to applicants for adjustment of status if the applicants have a priority date earlier than the monthly cut-off date for their particular category. *See* 8 U.S.C. § 1255(a).

31. Publicly available "cut-off dates" provide a window into the Department of State's system but do not reveal exactly how the agency collaborates with USCIS to determine which applicants are able to schedule an interview and potentially obtain a visa to enter the United States.

32. Sometimes when DOS, in collaboration with USCIS, establishes a Final Action Date for a particular month, the Final Action Dates retrogress, which is a term Defendant's use to describe the backwards movement of a Final Action Date for a particular country or category from one month to the next.

### B. EB-5 Employment Creation Immigrant Visas

33. In 1990, Congress created the Fifth Preference Immigrant Visa Category ("EB-5") for foreign national investors who invest in a new commercial enterprise, which will benefit the United States economy through the creation of ten or more full-time jobs for United States citizens, nationals, or lawful permanent residents. *Immigration Act of 1990*, Pub. L. No. 101-649, § 121(a), 104 Stat. 4978, 4989 (1990).

34. Section 1153(b)(5) of the Title 8 provides:

> Visas shall be made available… to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise … in which such alien has invested … capital … and which will benefit the United States economy and create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United

> States (other than the immigrant and the immigrant's spouse, sons, or daughters).

*Id.*

35. To qualify for the program, visa applicants had to originally make "direct" investments and create ten or more American jobs. 8 U.S.C. § 1153 (1990).

36. In 1992, Congress established a "pilot program" designed to give applicants more flexibility in how they could invest, but the pilot program had a sunset date thereby making the program subject to reauthorization by Congress. *See Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1993*, Pub. L. 102-395, § 610(a), 106 Stat. 1828, 1874 (Oct. 6, 1992).

37. The pilot program created a role for "regional centers" in the EB-5 investment process where foreign nationals could pool investments in regional centers to create qualifying jobs. *Id*.

38. In 2012, Congress removed the word "Pilot" from what is now known as the "Regional Center program," but the temporary nature of the program remained. *See Policy Memo, USCIS, PM-602-0083, EB-5 Adjudications Policy*, (May 30, 2013).

   **C. The EB-5 Reform and Integrity Act of 2022**

39. On June 30, 2021, the appropriations language preserving the regional center program "lapsed" for nine months before Congress reauthorized and reformed the EB-5 program on March 15, 2022 in the RIA. *See Aiteliyev v. Mayorkas*, 717 F. Supp. 3d 67, 70 (D.D.C. 2024).

40. The RIA amended 8 U.S.C. § 1153(b), which previously reserved 3,000 of the nearly 10,000 EB-5 visas available each year for petitioners who had invested in "rural" or "high unemployment" areas. 8 U.S.C. §§ 1153(b)(5)(A), (b)(5)(B) (2012).

41. The RIA transformed this set-aside into a percentage-based allocation with 20% devoted to those who invest in rural areas, 10% allocated for those who invest in high-

8

unemployment areas, and 2% for those who invest in infrastructure projects. 8 U.S.C. § 1153(b)(5)(B)(i)(I) (2024).

42.     In addition to allocating one-fifth of EB-5 visas to rural investments, the RIA directed USCIS to "prioritize the processing and adjudication of petitions for rural areas." 8 U.S.C. § 1153(b)(5)(E)(ii)(I).

43.     "This new prioritization rule was a boon for those who invest in rural areas given the labyrinthine nature of the EB-5 application process." *Aiteliyev*, 717 F. Supp. 3d. at 70-71.

44.     The RIA also addressed the times USCIS had to process EB-5 petitions and the fees to meet the new processing timelines.

45.     In the RIA, Congress required USCIS to complete a fee study on or before March 15, 2023, and then correlate the new fees for EB-5 related petitions and applications to processing times for the adjudication of such petitions and applications. RIA §§ 106(a), (b).

46.     In RIA § 106(b), Congress provided that USCIS:

> shall set fees for services provided under sections 203(b)(5) and 216A of such Act (8 U.S.C. 1153(b)(5) and 1186b) at a level sufficient to ensure the full recovery only of the costs of providing such services, including the cost of attaining the goal of completing adjudications, on average, not later than—
>
>> (1) 180 days after receiving a proposal for the establishment of a regional center described in section 203(b)(5)(E) of such Act;
>> (2) 180 days after receiving an application for approval of an investment in a new commercial enterprise described in section 203(b)(5)(F) of such Act;
>> (3) 90 days after receiving an application for approval of an investment in a new commercial enterprise described in section 203(b)(5)(F) of such Act that is located in a targeted employment area (as defined in section 203(b)(5)(D) of such Act);
>> (4) 240 days after receiving a petition from an alien desiring to be classified under section 203(b)(5)(E) of such Act;
>> (5) 120 days after receiving a petition from an alien desiring to be classified under section 203(b)(5)(E) of such Act with

9

>   respect to an investment in a targeted employment area (as defined in section 203(b)(5)(D) of such Act); and
>   (6) 240 days after receiving a petition from an alien for removal of conditions described in section 216A(c) of such Act.

*Id.*

### D. The Process to Become A Permanent Resident Based On Employment Creation

47. A foreign national investor seeking permanent residency based on his or her investment must first file a Form I-526 visa petition with USCIS. *See* 8 C.F.R. § 204.6(a).

48. USCIS will approve the petition if: 1) the requisite amount of money has been invested or is he or she actively in the process of doing so, 8 U.S.C. § 1153(b)(5)(C); 2) the source of the invested funds originated from lawful sources, 8 C.F.R. § 204.6(j)(3); 3) the investment will generate and sustain ten full time positions, 8 U.S.C. § 1153(b)(5)(A)(ii), 8 C.F.R. § 204.6(j)(4); and 4) the project and the structuring of its offering otherwise qualify with the terms of the EB-5 Program.

49. Following an approval of the I-526, the applicant must apply and receive adjustment of status if in the United States, *see* 8 U.S.C. § 1255, or apply and receive an immigrant visa if outside the United States through consular processing. 8 U.S.C. §§ 1186b(a)(1), 1201-02; 8 C.F.R. § 216.1; 22 C.F.R. §§ 42.32(e), 42.41, 42.42; see USCIS, Consular Processing, https://www.uscis.gov/green-card/green-card-processes-and-procedures/consular-processing (last accessed June 11, 2025).

50. Once status is adjusted or the individual secures admission to the United States after issuance of an approved EB-5 visa, he or she has conditional permanent resident status for a two-year period. *Id.*

51. Finally, conditional residents must then file a Form I-829 petition to remove the conditions on their permanent resident status in the 90-day period before the second anniversary

of obtaining conditional permanent resident status (or were admitted to the United States as a conditional permanent resident). 8 U.S.C. § 1186b(d)(2)(A); 8 C.F.R. § 216.6(a)(1)(i).

## STATEMENT OF FACTS

52. Plaintiffs seek permanent residency through their investment in a rural project principally doing business in Nederland, Texas.

53. Plaintiffs properly paid a fee and filed a Form I-526E visa petition.

54. USCIS did not complete the fee study required under the RIA by March 15, 2023, and set fees to match the Congressional timetables at RIA § 106(b). *U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements*, 89 Fed. Reg. 6194, 6239 (Jan. 31, 2024), *as corrected,* 89 Fed. Reg. 20101 (Mar. 21, 2024).

55. This has allowed USCIS to keep fees untethered to the processing times set forth in the RIA for the adjudication of immigration benefits under the EB-5 program.

56. Plaintiffs are affiliated with the following Regional Center: **CanAm Texas Regional Center LLC (RC2200000244)**.

57. Plaintiffs invested in the following NCE: **CanAm Texas Regional Center LP IV**.

58. The NCE lent the entire amount to **ZeroPark I LLC**, the Job Creating Entity ("JCE"), which is a wholly owned subsidiary of New Fortress Energy Inc., a publicly traded global energy infrastructure company.

59. The JCE has used the EB-5 capital to partially finance the development and construction of a 120-megawatt "green" hydrogen production facility located at 5470 North Twin City Highway in Nederland, Texas 77627 ("Project").

60. The Project consists of the following major components:

    i)    Installation of twelve 10-MW electrolyzers, an electrical substation, piping, and

        other related components; and

   ii)     Rail, dock, road and other supporting infrastructure installed onsite to facilitate the offtake and distribution of the completed "green" hydrogen product..

61.    On April 12, 2024, USCIS approved a Form I-956F, Application for Approval of an Investment in a Commercial Enterprise, (receipt number**: INF2260001114**) finding up to 125 investors, including Plaintiffs, would create sufficient jobs in the project to satisfy the EB-5 requirements.

62.    USCIS has approved an EB-5 petition for an investor in the project who filed the petition *after* Plaintiffs filed their petitions, with at least one petition filed in January 2024 approved.

63.    USCIS has not offered any reason why it adjudicated petitions out of order. 8 U.S.C. § 1153(e)(1).

## FIRST CAUSE OF ACTION
### (APA – Arbitrary, Capricious and Unlawful Action and Inaction)

64.    Plaintiffs incorporate the statement of facts as though restated here.

65.    Under the APA, courts must set aside agency action "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

66.    An action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (*quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

67.    The APA "codifies for agency cases the unremarkable, yet elemental proposition

reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment." *Loper Bright Enters. v. Raimondo*, 603 U.S. ---, 144 S. Ct. 2244, 2261 (2024).

68. In the RIA, Congress specifically required USCIS to complete a fee study on or before March 15, 2023, and set fees at a level that would allow the agency to adjudicate EB-5 immigration related applications and petitions within specific timeframes. RIA § 106(a), (b).

69. USCIS did not act in accordance with the RIA and has not set new fees tied to the mandatory average processing times.

70. The failure to act in accordance with the RIA has harmed Plaintiffs from receiving an adjudication within the Congressionally set timetables, which for a rural project in a targeted unemployment area would be 120 days. RIA § 106(b).

71. However, when read in context with the new expected timetables for processing of all EB-5 petitions provided in the RIA, Congress plainly intended for prioritization to mean processing and adjudication of petitions between 120 and 240 days for all other visa petitions. RIA § 106(b).

72. This Court should order USCIS to abide by the plain language of the RIA and prioritize Plaintiffs' petitions. 5 U.S.C. § 706(2).

## SECOND CAUSE OF ACTION
### (APA – Unlawful Withholding or Unreasonable Delay)

73. Plaintiffs re-allege the allegations in the statement of the facts as though restated here.

74. Congress requires federal agencies to act "[w]ith due regard for the *convenience and necessity* of the parties or their representatives and within *a reasonable time*, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b) (*emphasis added*).

75. The APA defines agency action, in part, as a "failure to act." 5 U.S.C. § 551(13).

76. The APA authorizes courts to compel agency action for two distinct types of "failures to act" — (1) unlawful withholding of agency action or (2) unreasonable delay of agency action. 5 U.S.C. § 706(1).

77. The RIA contains discrete, mandatory duties to complete a fee study and adjust fees to adjudicate petitions within specific timeframes. RIA §§ 106(a), (b).

78. Even without a fee study, Congress directed USCIS to "prioritize the processing and adjudication of petitions for rural areas." 8 U.S.C. § 1153(b)(5)(E)(ii)(I).

79. Here, USCIS has unlawfully withheld an adjudication of Plaintiffs' visa petitions by 1) not completing the fee study on time; 2) not prioritizing Plaintiffs' petitions; and 3) not adjudicating the petitions within 120 days.

80. Alternatively, Defendant has unreasonably delayed action on Plaintiffs' petitions.

81. Defendant has not applied a reasoned process to the adjudication of Plaintiffs' petitions.

82. USCIS has adjudicated petitions for investors in the same project who filed petitions after Plaintiffs.

83. USCIS has approved the Form I-956F for each individual Plaintiff's project and thereby endorsed the job creation required for approval of the immigrant visa petitions.

84. The timetable and intent to prioritize and complete processing within 120 days provides a timetable to consider the delay unreasonable at this point.

85. USCIS's delay prevents Plaintiffs and their derivative family members from the rights afforded under the RIA, and the rights afforded as lawful permanent residents, including the ability to work for any employer, start a business, or travel in and outside the United States without needing a visa or advance parole. 8 U.S.C. § 1101(a)(13).

86. Permanent residency provides flexibility for Plaintiffs to travel and return without leaving the admission to the discretion of an officer at the border. *See* 8 U.S.C. §

1101(a)(13)(A).

87.     Permanent residency also will provide Plaintiffs who have remained in nonimmigrant status with the unrestrained ability to start their own business or find new employment without needing to have the employer sponsor them.

88.     An order to compel USCIS to adjudicate the EB-5 petitions would not cause Plaintiffs to jump the queue.

89.     On the contrary, an order from this Court would only require priority consideration in accordance with law.

90.     Accordingly, this Court should find USCIS has unlawfully withheld or unlawfully delayed action on Plaintiffs' petitions and concurrently filed applications for adjustment of status.

## **PRAYER FOR RELIEF**

Plaintiffs pray that this Court will:

A.      Take jurisdiction over this matter;

B.      Declare that Defendant has acted arbitrary, capricious, and not in accordance with law by failing to timely complete a fee study as required under the EB-5 Reform and Integrity Act of 2022 and adjust processing times for rural-based visa petitions to match Congress's expectations;

C.      Declare that USCIS has unlawfully withheld or unreasonably delayed the processing of Plaintiffs' EB-5 petitions;

D.      Order Defendant to pay reasonable counsel fees and costs under the Equal Access to Justice Act or another provision of law; and

E.      Enter and issue other relief that this Court deems just and proper.

/////

| | |
|---|---|
| June 12, 2025 | Respectfully submitted, |
| | */s/ Jesse M. Bless* |
| | Jesse M. Bless (#660713) |
| | Bless Litigation LLC |
| | 6 Vineyard Lane |
| | Georgetown, MA 01833 |
| | 781-704-3897 |
| | Email: jesse@blesslitigation.com |
| | Attorney for Plaintiffs |